NICOLO FRATTO *vs.* BOSTON ELEVATED RAILWAY COMPANY.

Middlesex.    March 27, 1918. — May 25, 1918.

Present: RUGG, C. J., BRALEY, DE COURCY, CROSBY, & CARROLL, JJ.

*Practice, Civil,* Judge's charge, Exceptions. *Negligence,* Contributory, Employer's liability.

In an action against a street railway corporation for personal injuries sustained, before the passage of the workmen's compensation act and St. 1914, c. 553, when the plaintiff was working for the defendant in a sand pit, into which a track of the defendant at a grade of fifteen per cent was laid for the purpose of towing out flat cars loaded with sand, by reason of being struck by such a loaded sand car that was being towed by an electric car which, having failed to reach the top of the grade pulling the heavy load, was slowly backing down, it appeared that the plaintiff and two fellow workmen were leaving the pit and were taking their tools to a box near the crest of the hill, going on the track which was the only available way, that, as the car approached, one of the plaintiff's fellow workmen stepped off the track to the right and, the other to the left but that the plaintiff remained on the track and was struck by the sand car. A witness for the plaintiff testified that the plaintiff "was looking at the ties, for there were some of them uncovered." The presiding judge in his charge to the jury said, "It is said on the part of the defendant that his [the plaintiff's] head was down. There was some evidence introduced tending to show that his head was down; that he was looking at the sleepers." When at the close of the charge the judge's attention was called to this statement, he said to the jury, "If you understood the evidence was different, you will rely upon your own recollection of the evidence. I have told you time and again not to rely upon my understanding, but upon your own recollection." Later he said, without objection from the plaintiff, "In the first place, what is the fact? Did he go with his head down, or did he go looking up? If he went looking up, must he necessarily have seen the car or known that the car was coming? If he was looking down, and not looking for a car, was he justified in not looking for a car on account of there being no danger that he had any reason to anticipate?" The jury found that the plaintiff was not in the exercise of due care, and the plaintiff alleged exceptions to the first statement of the judge quoted above. *Held,* that the statement of the judge seemed to be warranted by the evidence; and that, in any event, the judge was careful not to impose his recollection of the evidence upon the jury and that the exceptions must be overruled.

In the same case the plaintiff excepted to a statement in the judge's charge, "Now suppose you find he was not in the exercise of due care, that is the end of the case; he cannot recover." *Held,* that the exception must be overruled; because, if the plaintiff could have avoided the accident by stepping from the track as his companions did, his failure to do so was the direct cause of his injury; and, assuming that the motorman could have avoided the accident by stopping the car after he saw the plaintiff, his failure to do so, if negligent, would have been the negligence of a fellow servant.

TORT for personal injuries sustained on November 25, 1910, when the plaintiff was working for the defendant in a gravel and sand pit in Watertown. Writ dated December 27, 1910.

In the Superior Court the case was tried before *Raymond*, J. The evidence is described in the opinion, where also are stated the three special questions submitted by the judge to the jury with the answers thereto and the exceptions taken by the plaintiff to certain statements made by the judge in his charge to the jury. The jury returned a general verdict for the defendant, and the judge reported the case for determination by this court.

*J. H. Vahey*, (*P. Mansfield* with him,) for the plaintiff.

*H. D. McLellan*, for the defendant.

DE COURCY, J. The plaintiff was working for the defendant in a gravel and sand pit at Watertown. A railway track, four or five hundred feet in length, extended from Arlington Street down to the level of the pit. At about five o'clock in the afternoon of November 25, 1910, a sand car had been loaded at a point about one hundred feet up from the level, where the grade of the track was approximately fifteen per cent. An electric car, to which this flat car was coupled as a trailer, was unable to pull the heavy load up to the crest, and the cars backed down slowly, either because they slipped back, as contended by the plaintiff, or because the motorman on the motor car desired to get a start from the level piece of track below. The plaintiff and two fellow workmen had finished work at the pit, and were taking their tools to the box near the crest of the hill. They proceeded part of the way upon the track, and as the car approached one of them stepped off the track to the right, and another to the left; but the plaintiff, remaining on the track, was struck by the flat car and seriously injured.

The case went to the jury on common law counts alleging (1) that the plaintiff was negligently put to work in an unsafe place; (2) negligence in furnishing an unsafe, defective and dangerous electric car, and (3) failure to give the plaintiff instructions and notice of dangers incident to his employment. The jury returned a general verdict for the defendant, and also answered three questions submitted to them as follows:

1. "Was the plaintiff in the exercise of due care?" Answer, "No." 2. "Was the defendant guilty of negligence in the use

and equipment of the electric car that ran over the plaintiff in relation to the trolley pole?" Answer, "Yes." 3. "If the defendant was negligent in the use and equipment of the electric car, in relation to the trolley pole, did that negligence contribute to the accident?" Answer, "No."

In the course of his charge to the jury the judge said: "It is said on the part of the defendant that his [the plaintiff's] head was down. There has some evidence been introduced tending to show that his head was down, that he was looking toward the sleepers." The first exception argued on behalf of the plaintiff is to this language, as an alleged prejudicial misstatement and misinterpretation of the evidence. As matter of fact the plaintiff's witness Popolo testified as follows: "Q. Was Fratto running with his head down and did he run against the car? A. Fratto was looking at the ties, for there were some of them uncovered." In the cross-examination of the plaintiff himself appears, "Q. Were you running up hill at the time of the accident? A. I was running to put the shovel into the box." There was other testimony that the three men "were running toward the car." When, at the close of the charge, the judge's attention was called to the language in question he said to the jury, "If you understood the evidence was different, you will rely upon your own recollection of the evidence. I have told you time and again not to rely upon my understanding, but upon your own recollection." Later in the charge he dwelt on this subject as follows, without objection: "In the first place, what is the fact? Did he go with his head down, or did he go looking up? If he went looking up, must he necessarily have seen the car or known that the car was coming? If he was looking down, and not looking for a car, was he justified in not looking for a car on account of there being no danger that he had any reason to anticipate?" It seems to us that the judge's statement was fairly warranted by the evidence, and that in any event he was careful not to impose his recollection upon the jury. This exception must be overruled.

The plaintiff also excepted to the statement in the charge, "Now suppose you find he was not in the exercise of due care, that is the end of his case; he cannot recover." It is to be remembered that the statute relieving a plaintiff from the burden of proving his due care (St. 1914, c. 553) was not in existence at the

time of the accident. In support of this exception the plaintiff argues elaborately the doctrine of the "last clear chance." No such issue, however, was raised at the trial or suggested in the plaintiff's requests for rulings. Further, we are aware of no case wherein that doctrine has been adopted in this Commonwealth. It was said in *Black* v. *New York, New Haven, & Hartford Railroad*, 193 Mass. 448, 451, " . . . the doctrine has been established that, when the plaintiff's negligence or wrongdoing has placed his person or property in a dangerous situation which is beyond his immediate control, and the defendant, having full knowledge of the dangerous situation, and full opportunity, by the exercise of reasonable care, to avoid any injury, nevertheless causes an injury, he is liable for the injury. This is because the plaintiff's former negligence is only remotely connected with the accident, while the defendant's conduct is the sole, direct and proximate cause of it." In the present case the plaintiff was able to avoid the accident by stepping from the track, as his companions did. And, assuming that the motorman could have avoided the accident by stopping the car after he saw the plaintiff, his failure to do so, if negligent, would be the negligence of a fellow servant, for which the defendant is not answerable in this common law action.

The only other exception argued by the plaintiff is that to the ruling that there was no sufficient evidence to submit to the jury the question, whether the defendant was negligent with reference to the car's braking power or mechanism, as well as in relation to the trolley pole. In view of the finding by the jury that the plaintiff was not in the exercise of due care, the consideration of this exception becomes immaterial.

The seriousness of the injuries suffered makes this a hard case, especially as the workmen's compensation act was not in effect at the time of the accident. But after a full and fair trial, in which he was represented by competent counsel, the jury have found that the accident was due in part to the plaintiff's failure to exercise reasonable care for his own safety. And, as no error in the conduct of the trial has been shown, the entry must be

*Judgment on the verdict for the defendant.*